UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVE WHEAT,

    Plaintiff,

 v.

WAL-MART ASSOCIATES, INC.,

    Defendant.

Case No.  1:22-cv-01524-BAM

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

(Doc. 80)

ORDER SETTING STATUS CONFERENCE

    Pending before the Court is Defendant Wal-Mart Associates, Inc.'s ("Defendant") motion for summary judgment or in the alternative, partial summary judgment.  (Doc. 80.)  The motion has been fully briefed.  (Doc. 80-84.)[1]  Having carefully considered all of the parties' briefing and the record in this case, and for the reasons detailed below, Defendant's motion for summary judgment will be GRANTED in part and DENIED in part.

**I.  BACKGROUND**

    On October 27, 2022, Plaintiff Steve Wheat ("Plaintiff") filed this action in Tulare County Superior Court, alleging violations of California's Fair Employment and Housing Act ("FEHA"), wrongful termination in violation of public policy, and failure to maintain and produce accurate records pursuant to California Labor Code.  (Doc. 1-1.)  According to Plaintiff's complaint, Plaintiff was hired by Defendant Wal-Mart Associates, Inc. on August 5, 1991, and worked for

---

[1] Documents from the CM/ECF docket are referenced throughout this order by their CM/ECF docket number and CM/ECF pagination.

1

Defendant for over twenty years.  (Doc. 1-1 at 4 ¶¶ 7-10.)  Defendant hired Uriel Rosalez,[2] as Operations Manager, who began to harass Plaintiff due to Plaintiff's age and tell Plaintiff that Mr. Rosalez and others were trying to push out older managers in favor of new managers.  (*Id.* at 4-5 ¶ 8-15.)  Plaintiff complained to General Manager Kent Delperdang regarding Mr. Rosalez's comments and harassment. (*Id.* at 5-6 ¶ 16-17.)  Mr. Delperdang informed Plaintiff that he still needed to see improvement from Plaintiff and suggested that Mr. Rosalez's comments were a "poor choice of words."  (*Id.*)  Mr. Delperdang subsequently took no action to help Plaintiff or to stop Mr. Rosalez's age-related comments.  (*Id.*)  In 2021, Plaintiff began having issues with his feet and ankles, causing him pain when he walked.  (*Id.* ¶ 20.)  When Plaintiff raised that issue to Mr. Rosalez, Mr. Rosalez told Plaintiff that he was "just falling apart because [he was] getting too old" and did nothing to help.  (*Id.*)  Plaintiff also raised these medical issues to Mr. Delperdang, who similarly did nothing and did not respond to Plaintiff's request for accommodation.  (*Id.*) Plaintiff subsequently brought a worker's compensation claim over the medical issues with his feet and ankles.  (*Id.* ¶ 21.) Following the worker's compensation claim, Mr. Delperdang became more hostile to Plaintiff and began bringing up Plaintiff's performance and disciplinary issues. (*Id.* at 6-7 ¶¶ 22-26.)  Plaintiff was terminated on July 19, 2021 with no stated reason for his termination.  (*Id..* at 7-8 ¶¶ 26.)  Plaintiff was subsequently replaced by a younger man who he trained.  (*Id.* ¶ 27.)

Defendant removed this action from Tulare Superior Court to this Court.  (Doc. 1.)  On December 7, 2022, this action was authorized to proceed before the undersigned for all further proceedings including trial and entry of judgment based upon the parties' consent.  (Doc. 9.)  On February 14, 2025, following a series of discovery disputes, Defendant filed the instant motion for summary judgment.  (Doc. 80.)  Defendant further filed a notice of errata regarding an exhibit to the motion on February 27, 2025.  (Doc. 81.)  Plaintiff filed his opposition on February 28, 2025.  (Doc. 82.)  On March 10, 2025, Defendant filed its reply and a notice of errata regarding

---

[2] Throughout the briefing and supporting documents, Mr. Rosalez's name is spelled multiple ways.  For ease of reference, the court refers to either "Mr. Rosalez" or "Uriel Rosalez."

the supporting declaration of Mr. Delperdang.  (Docs. 83-84.)   The motion was taken under

submission pursuant to Local Rule 230(g).  (Doc. 85.)

## II.    EVIDENTIARY OBJECTIONS

As a preliminary matter, Plaintiff argues that the declaration of Kent Delperdang should

be stricken in its entirety because the declaration is undated and includes an image file signature

in place of the signature.  (Doc. 82-7 at 2.)  Plaintiff also raises numerous objections to the

supporting declarations of Uriel Rosalez, Luis Garcia, Kent Delperdang, and Mary Lou Gonzalez,

primarily based on lack of foundation, lack of personal knowledge, and hearsay.  (Docs. 82-5, 82-

6, 82-7, 82-8.)

Defendant raises an objection to Exhibit P to Plaintiff's counsel's declaration.  (Doc. 84-1

at 24.)  Defendant also raises numerous objections to the supporting declaration of Plaintiff Steve

Wheat.  (Doc. 84-1.)

The Court will not strike Mr. Delperdang's declaration.  Defendant filed a notice of errata

in which Defendant notes that Mr. Delperdang's declaration was inadvertently filed with the

omission of date and location.  (Doc. 83.)  In support of that notice, Defendant includes both the

corrected signature page of Mr. Delperdang's declaration and an additional declaration in which

Mr. Delperdang states that on February 13, 2025, he "reviewed the Declaration [he] intended to

make in support of Defendant Wal-Mart Associates, Inc.'s ("Walmart") Motion for Summary

Judgment, or in the Alternative, Partial Summary Judgment ("Motion") attached to the Appendix

of Evidence in support of Defendant's Motion as Exhibit 1. [Document No. 80-5]."  (Doc. 83-1 at

2 ¶ 3.)  Mr. Delperdang notes that he provided an e-signature to Defendant's counsel for the

declaration on February 13, 2025, as he was in transit and "did not have the ability and / or

resources to print and sign a hard copy of the aforementioned Declaration."  (*Id.* ¶ 4.)

Considering this notice of errata and Mr. Delperdang's declarations, Plaintiff's request to strike

Mr. Delperdang's declaration is denied.

The Court also finds Defendant's objections to Plaintiff's counsel's Exhibit P inapposite.

(Doc. 84-1 at 24-25.)  Plaintiff's counsel states that "Walmart produced a signed statement by an

employee named Jose Gonzalez regarding Uriel Rozales' comment, 'we have a lot of key associates that are ready to move up in the company and replace managers that can't perform to expectations'" and that "A true and correct copy, produced by Walmart at WM-WHEAT-0001744, is attached hereto as Exhibit P."  (Doc. 82-1 at 4 ¶ 11.)  Defendant fails to explain how this information is irrelevant or conclusory and does not clarify how Plaintiff's counsel has not laid the foundation for this exhibit.  Defendant's objection to Exhibit P to Plaintiff's counsel's declaration is overruled.

Regarding the remainder of the parties' objections, the Court declines to address Plaintiff's and Defendant's objections individually but notes that when evaluating a motion for summary judgment, a court "cannot rely on irrelevant facts, and thus relevance objections are redundant."  *Burch v. Regents of the Univ. of Cal.,* 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  In addition, "improper legal conclusions... are not facts and likewise will not be considered on a motion for summary judgment."  *Id.*; *see also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (finding that district court abused its discretion where it sustained "boilerplate one-word objections for 'relevance,' 'hearsay' and 'foundation' in motion for summary judgment).  The Court also declines to sustain the hearsay objections and foundational objections.  *See US E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015) (declining to sustain hearsay objections and noting "On summary judgment, 'objections to the form in which the evidence is presented are particularly misguided where, as here, they target the non-moving party's evidence'"); *Weatherby Locums Inc. v. Kern Cnty. Hosp. Auth*., No. 1:20-CV-00949 JLT CDB, 2024 WL 4729057, at *5 (E.D. Cal. Nov. 8, 2024) (overruling foundation objections and noting "To the extent any declarant makes statements regarding matters of which he or she does not have personal knowledge, the Court does not rely on statements in resolving… [the motion], Moreover, any other foundational issues can be cured at trial…")

In the analysis below, the Court relies only upon any evidence that may be presented in an admissible form at trial in evaluating the merits of the motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(2); *see also Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018)

4

("the court must review the evidence in light of what would be admissible before either the court or jury" [citation omitted]); *Burch*, 433 F. Supp. 2d at 1119-1120 (even if evidence is presented in a form that is currently inadmissible, it may be considered on a motion for summary judgment so long as the admissibility defects could be cured at trial). Toward that end, the objections to any evidence cited below—particularly as to objections related to admissibility— are overruled.

The Court now turns to Defendant's motion for summary judgment.

## III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.* Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the

movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun,* 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson,* 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## IV.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[3]

Plaintiff's operative complaint alleges claims for relief arising under California state law, including: (1) age discrimination; (2) age harassment; (3) disability discrimination; (4) failure to accommodate; (5) failure to engage in the interactive process; (6) retaliation; (7) failure to prevent

---

[3] The parties are advised that this Court has carefully reviewed and considered the record; the relevant law; and all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

discrimination, harassment, and retaliation; (8) wrongful termination in violation of public policy; and (9) failure to maintain and produce accurate records pursuant to California Labor Code. (Doc. 1-1.)  Defendant moves for summary judgment on each of these claims for relief and argues that Plaintiff's prayer for punitive damages is barred.  (Doc. 80-1.)

### A.  Plaintiff's Rule 56(d) Request to Deny Defendant's Motion

As an initial matter, Plaintiff argues that the Court should deny Defendant's motion for summary judgment pursuant to Federal Rule of Procedure 56(d), as Plaintiff was unable to complete discovery prior to the discovery cutoff.  (Doc. 82 at 14-15.)

Federal Rule of Civil Procedure 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d). In assessing an earlier version of Federal Rule 56(d), the Ninth Circuit has held that the "burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists…  and that it would prevent summary judgment."  *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) (citing *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir.1994)).  The Ninth Circuit has further held that the supporting "affidavit must identify the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

The party seeking the denial or deferral of summary judgment must also show that it diligently pursued previous opportunities for discovery.  *See Qualls*, 22 F.3d at 844 (analyzing an earlier version of Federal Rule 56(d) and holding "We will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment."); *see also Program Eng'g, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980) (analyzing an earlier version of Federal Rule 56(d) and noting that, "Generally

where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment.").

Here, Plaintiff states that "Despite Plaintiff's diligent efforts to complete discovery – including five discovery status conferences and informal discovery conferences to move the discovery process forward – Plaintiff was unable to complete discovery by the cutoff." (Doc. 82-1 at 2-3 ¶¶ 2-9.)

The Court has already addressed Plaintiff's request for further discovery. In an order denying Plaintiff's request for modification of the scheduling order to conduct this exact discovery, the Court found that "Plaintiff has not demonstrated diligence and good cause for modification." (Doc. 59 at 5.) The Court noted that fact discovery had been pending for a year-and-a-half and that an "additional six months would not allow completion of the discovery Plaintiff anticipates."[4] The Court had acknowledged that Plaintiff had "been engaging in discovery and that discovery has occurred, but Plaintiff's litigation strategy of attempting to obtain every potential document and pursuing every avenue of discovery has not worked." (*Id.*) Given that the Court has already found that Plaintiff was not diligent in discovery practices and that further extensions would not permit completion of Plaintiff's anticipated discovery, deferring resolution of Defendant's motion for summary judgment pursuant to Rule 56(d) is unwarranted.

Moreover, Plaintiff does not specify the facts or evidence or explain "why those facts would preclude summary judgment." *Tatum*, 441 F.3d at 1100. Plaintiff's counsel's declaration notes the additional discovery sought – a deposition of Plaintiff's alleged harasser Uriel Rosalez, "AES Survey results" that Defendant may have relied upon in Plaintiff's termination, and Plaintiff's employment records – but does not explain how this evidence would preclude summary judgment. (Doc. 82-1 at 2-3 ¶¶ 2-9.) Plaintiff claims that the "outstanding depositions

---

[4] When Plaintiff made this request to continue, the Court had already modified the discovery deadlines once and continued all dates in the Scheduling Order by six months to permit the parties to complete essential discovery. Doc. 38. Plaintiff then asked for another six months.

include critical players who submitted evidence in support of Summary Judgment but whom Plaintiff has not been able to depose," though does not identify what evidence or facts Plaintiff expected to obtain that would prevent summary judgment. (Doc. 82 at 15.) In sum, Plaintiff has not identified the specific facts that further discovery would reveal or why those facts would preclude summary judgment. *See Tatum*, 441 F.3d at 1100.

Further, as the Court has explained, an exercise of reasonable diligence in discovery is lacking. The discovery now sought has been known to exist since the inception of this case.

Accordingly, Plaintiff's request that Defendant's motion for summary judgment be denied pursuant to Federal Rule of Civil Procedure 56(d) is DENIED.

### B. Plaintiff's Age Discrimination Claim for Relief

Plaintiff alleges that Defendant discriminated against him because of his age by unfairly targeting him for discipline and terminating him. (Doc. 1-1 at 8-9.) Defendant contends that Plaintiff cannot establish a prima facie case of age discrimination as he was not performing satisfactorily and there is no evidence of unlawful discrimination, and further argues that Plaintiff cannot dispute Defendant's non-discriminatory reason for termination. (Doc. 80-1 at 20-22, Doc. 84 at 4-8.) Plaintiff responds that Plaintiff was performing his job satisfactorily, the decision makers' age-based comments present direct evidence of discrimination, and Defendant's reasons for terminating Plaintiff were pretextual. (Doc. 82 at 17-24.)

The FEHA prohibits employment discrimination based on a variety of grounds including age. *See* Cal. Gov't Code § 12940(a)). The Legislature has declared its intent "that the courts interpret the state's statutes prohibiting age discrimination in employment broadly and vigorously, in a manner comparable to prohibitions against sex and race discrimination." Cal. Gov't Code § 12941. The FEHA differs from the federal Age Discrimination in Employment Act (29 U.S.C. §§ 621-634), but California courts look to federal case law in the interpretation of analogous provisions of the FEHA. *See Hersant v. California Dept. of Social Services*, 57 Cal.App.4th 997, 1002 fn. 1 (1997).

To establish a prima facie case of age discrimination pursuant to FEHA, a plaintiff must

first "show he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1146 (9th Cir. 2017) (quotations omitted).  Once plaintiff has demonstrated a prima facie case, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the employee's rejection.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 67-69 (2000).  If the employer articulates a legitimate reason for the challenged behavior, then the plaintiff must show the employer's offered explanation is pretextual by establishing that a discriminatory reason was the more likely explanation for the employer's action or by showing that the proffered explanation is not believable.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment," because the ultimate question of discrimination is most appropriately conducted before a factfinder on the full record.  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000).

The Court turns to the elements in Plaintiff's prima facie case.

### 1. The Parties Do Not Dispute That Plaintiff Was Over 40 Years Old and Was Discharged

The parties do not dispute that Plaintiff was over 40 years old and was discharged.  (*See* Doc. 80-1 at 20-23, Doc. 82 at 17-23, Doc. 82-1 at 16.)

### 2. Plaintiff Raises a Genuine Issue as to Whether He Was Performing His Job Satisfactorily

Defendant argues that Plaintiff was not performing his job satisfactorily, citing Plaintiff's disciplinary record, supervisor testimony, performance metrics, and performance reviews.  (Doc. 80-1 at 20, Doc. 84 at 5-6.)  Plaintiff responds that he was performing his job satisfactorily given performance reviews.  (Doc. 82 at 17.)

The Ninth Circuit has examined whether performance remained a triable issue at different levels of job performance.  In *Diaz v. Eagle Produce Ltd. Partnership*, the Ninth Circuit held that two employees established a triable issue of fact regarding satisfactory performance where they "generally performed dependably and without incident" and "Deficiencies in their performance were relatively minor and infrequent."  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1208 (9th Cir. 2008).  The Ninth Circuit found that the issue was closer but still triable for an employee who "damaged Eagle Produce property three times over the course of approximately four years and once violated a company safety rule, but those incidents were also relatively infrequent" and "there [was] no evidence that [the employee] caused any of the damage intentionally or recklessly, and his supervisor generally found him to be dependable."  *Id.*  The Ninth Circuit distinguished this from the behavior of an employee "who over an extended period openly violated Eagle Produce's policy against solicitation on company property and continued to do so even after receiving a warning from [a supervisor]," concluding that "no reasonable juror could find that [employee's] performance was satisfactory."  *Id.*; *see Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 322, 115 Cal. Rptr. 3d 453, 473 (2010) ("the prima facie burden exists in order to weed out patently unmeritorious claims").

Here, Plaintiff contends that his performance was solid and met expectations.  (Doc. 82 at 17.)  In support, Plaintiff cites to performance reviews from 2018 through 2021, including the year he was terminated.  (*Id.*, Doc. 82-2 at 50-60.)  While these reviews reveal a mix of ratings between "Solid Performer," "Meets Expectations," "Development Needed" or "Improvement Needed," Plaintiff's "Overall Performance" rating was "Solid Performer" or "Meets Expectations."  (Docs. 82-2 at 50, 54, 58.)  Although this is a closer issue given the "Development Needed" or "Improvement Needed" ratings in quality, service, and "Operate with Discipline" categories, Plaintiff has presented sufficient evidence to raise a triable issue as to satisfactory job performance.  *See Diaz*, 521 F.3d at 1208.

Defendant argues that Plaintiff's performance reviews and metrics demonstrate that Plaintiff's performance was unsatisfactory, citing performance metrics from 2019 to 2021 and

11

Plaintiff's disciplinary record from 2018 to 2021 which includes both minor "Memos to File" and the more serious "Step" disciplinary processes over the course of three years.  (*See* Doc. 80-3 at 13-17, 19-22, 24, 26; Doc. 80-5 at 12; Doc. 80-6 at 39-48, 64-76, 135-137.)  While this evidence goes to whether Plaintiff was performing satisfactorily, it also underscores that there is an issue of fact as to his performance, and it does not undermine Plaintiff's evidence of overall satisfactory performance reviews for purposes of this motion.  *See Anderson,* 477 U.S. at 255.  Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue as to whether he was performing his job satisfactorily.

### 3. Plaintiff Has Shown a Genuine Issue of Material Fact Remains as to Replacement by a Younger Employee or Inference of Discrimination

To show replacement by a younger employee or evidence to create an inference of discrimination, Plaintiff points to Mr. Rosalez's and Defendant's human resources representative Mary Lou Gonzalez's age-based comments; Plaintiff's replacement by a younger employee; Defendant's deviation from its progressive discipline policy; Defendant's lack of corroborating documentation; the suspect timing of Plaintiff's termination; Defendant's disparate treatment of Plaintiff compared to other employees; and inconsistent performance evaluations.  (Doc. 82 at 17-24.)

Plaintiff has provided sufficient evidence to show a genuine dispute as to this element. "To support an inference of discrimination an employee need not demonstrate that one particular individual was designated as his replacement; evidence that a group of younger and comparably or less-qualified employees assumed the plaintiff's responsibilities is sufficient."  *Diaz*, 521 F.3d at 122 (allowing employees to point to younger workers as their "collective replacements").

Here, Plaintiff testified that he would have been around 59 years old at the time of his termination and that he was replaced by Hector Sevilla, who previously worked for him and was under 40.  (Doc. 80-6 at 356, Doc. 82-1 at 16.)  Plaintiff testified that Mr. Sevilla was in his area shortly before his termination and told Plaintiff that he was "coming to train to take [Plaintiff's] spot."  (*Id.*)  Ms. Gonzalez, a human resources representative, testified that either Fabian

Anguiano or Hector Sevilla likely replaced Plaintiff, but that she did not recall which one precisely replaced him.  (Doc. 82-1 at 76-77.)  Ms. Gonzalez further testified that Fabian Anguiano appeared to be "Under the age of 40" or "possibly right at 40.  (Doc. 82-1 at 77-78.)  She further testified that Hector Sevilla appeared to be "probably late 30s, right at 40." (*Id.* at 78.)  Thus, Plaintiff provided evidence that he was likely replaced by an employee approximately 20 younger than himself and under the age of 40.

As the parties do not dispute that Plaintiff was over 40 and discharged, and Plaintiff has raised a genuine dispute of material fact that he was performing satisfactorily and was replaced by a younger employee, he has sufficiently established a prima facie case of disability discrimination.

### 4. Defendant Provides a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination

Once a FEHA plaintiff has demonstrated a prima facie case, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the employee's rejection. *McDonnell Douglas*, 411 U.S. at 802; *Morgan*, 88 Cal. App. 4th at 67-69.  "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981)); *see Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 356 (2000).  The employer need only articulate, not prove, a legitimate, non-discriminatory reason for deciding to terminate the plaintiff.  *See Univ. of Southern Cal. v. Superior Court*, 222 Cal.App.3d 1028, 1039 (1990) (employer met its burden "through the introduction of admissible evidence [setting forth] the reasons for the plaintiff's rejection").  Moreover, courts "only require that an employer honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002); *Guz,* 24 Cal.4th at 358 (reasons need not be "wise or correct").

Here, Defendant contends that Mr. Wheat was terminated due to his poor performance, his disciplinary record, and failure to improve his job performance as supported by performance reviews and metrics. (Doc. 80-1 at 22.) For instance, the productivity metrics for Defendant's work shift from 2019 and 2020 show that Plaintiff's shift was the least productive out of the other shifts for those years. (*See* Doc. 80-6 at 64-68) (showing Shift 2 productivity at 95%, Shift 1 productivity at 100.62%, Shift 4 productivity at 101.85%, Shift 5 productivity at 96.85%.) Defendant also cites Plaintiff's performance review from fiscal year 2021, which indicated Plaintiff needed improvement in the quality, service, and "Operating with Discipline" areas. (Doc. 80-6 at 135-137.) Defendant further points to Plaintiff's disciplinary record, including: an October 16, 2018 Memo to File regarding Plaintiff's failure to cover an item with his team; conversations and formal disciplinary actions in 2019; records of conversations, coaching, and formal disciplinary actions in 2020; a September 29, 2020 Memo to File regarding failure to track and document cartons per trailer; an October 29, 2020 Memo to File stating that Plaintiff needed "to do a better job of following up and addressing his NHM associates to ensure they are following procedures set in place when loading in NHM;" an April 12, 2021 "Step 2" verbal coaching disciplinary action related to failing to catch a runtime error; a May 10, 2021 Step 3 coaching disciplinary action related to Plaintiff failing to follow up with loaders, a June 5, 2021 memo to file related to sending a yard driver home that impacted the shipping dock. (Doc. 80-3 at 13-15, 16-17, 21-22). Defendant has therefore identified a legitimate, non-discriminatory basis for Plaintiff's termination. *See Buenrostro v. Potter*, 176 F. App'x 828, 828 (9th Cir. 2006) (poor work performance was legitimate, non-discriminatory reason for terminating employee).

### 5. Plaintiff Demonstrates a Genuine Dispute Regarding Defendant's Reason for Termination

Because Defendant has provided a legitimate, non-discriminatory reason for termination, the burden shifts to Plaintiff to show that Defendant's explanation was merely a pretext to conceal discriminatory conduct. *McDonnell Douglas,* 411 U.S. at 804; *Villiarimo,* 281 F.3d at 1062-63; *Guz,* 24 Cal.4th at 354. A plaintiff must show "a genuine factual question whether, viewing the

14

evidence in the light most favorable to them, [the employer's] reasons are pretextual." *Chuang*, 225 F. 3d at 1126; *see Guz,* 24 Cal.4th at 361–62. The employee's burden of proof for this step is a preponderance. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000). An employee may meet this burden by directly showing the employer was more likely motivated by discriminatory intent or indirectly showing the employer's explanation is unworthy of credence. *Reeves,* 530 U.S. at 143; *Villiarimo,* 281 F.3d at 1062; *Morgan,* 88 Cal. App. 4th at 68–69, 105 Cal.Rptr.2d 652. Although Plaintiff may rely on circumstantial evidence to show pretext, such evidence must be specific and substantial evidence. *See Aragon v. Republic Silver State Disposal Inc.,* 292 F.3d 654, 661 (9th Cir. 2002); *Morgan,* 88 Cal. App. 4th at 69. In age discrimination cases, courts have required evidence in addition to replacement by a younger employee to demonstrate pretext. *See Siazon v. Hertz Corp.*, No. 17-CV-05935-EMC, 2019 WL 1170778, at *13 (N.D. Cal. Mar. 13, 2019), *aff'd*, 847 F. App'x 448 (9th Cir. 2021); *Hortobagyi v. Columbia Sussex Mgmt., LLC,* No. CV 14-0244 DOC(FFMX), 2015 WL 12683950, at *5 (C.D. Cal. Mar. 5, 2015) ("While [awareness of age replacement by a younger general manager] alone are sufficient to establish a prima facie case of age discrimination, they are insufficient to sustain a finding that Defendant's non-discriminatory reason was pretext.").

Plaintiff points to several pretextual bases: Mr. Rosalez's (Operations Manager) and Mary Lou Gonzalez's (Human Resource representative) age-based comments, Plaintiff's replacement by a younger employee, Defendant's deviation from its progressive discipline policy, Defendant's lack of corroborating documentation, Defendant's disparate treatment of Plaintiff compared to other employees, inconsistent performance evaluations. (Doc. 82 at 17-24.)

The Court agrees that Plaintiff has established sufficient evidence to create a genuine issue of material fact as to pretext. (Doc. 80-6 at 356, Doc. 82-1 at 76-78.) Plaintiff points to at least three age-based comments by his supervisor Mr. Rosalez. First, Plaintiff testified to an instance in which Mr. Rosalez was "talking about there's a bunch of younger managers -- or younger hourlies out there that they want to push through to managers," and Mr. Rosalez said, "You older managers need to watch your p's and q's." (Doc. 80-6 at 236.) Second, Plaintiff testified that

Plaintiff went into Mr. Rosalez's office to complain about Plaintiff's Achilles issues, and Mr. Rosalez told Plaintiff, "Steve, you're getting too goddamn old." (*Id.* at 236-37.) Notably, Plaintiff testified that this comment occurred when the shipping department "was going through COVID," suggesting that the comment occurred between March 2020 and Plaintiff's termination in July 2021. (*Id.*) Third, Plaintiff testified that Mr. Rosalez joked during a manager meeting, "You older managers need to get out there and help too, and you too, Steve." (*Id.* at 246.) Taking these statements, with the other evidence Plaintiff offers, including deviation from progressive discipline, being replaced by a younger employee, this evidence is sufficient to undermine Defendant's identified reason and Plaintiff raises a disputed issue of fact as to pretext.

Accordingly, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's age discrimination claim.

### C. Plaintiff's Age Harassment Claim

Defendant next moves for summary judgment as to Plaintiff's age harassment claim, arguing that any age-based harassment was not sufficiently severe or pervasive. (Doc. 80-1 at 24-26, Doc. 84 at 8.) Plaintiff argues that Defendant has admitted to numerous specific examples of age-based comments and Plaintiff frequently experienced age-based harassment. (Doc. 82 at 25.)

Under FEHA, it is unlawful for an employer to harass an employee based on "race, religious creed, color, national origin, ancestry, physical disability...age...or veteran or military status." Cal. Gov't Code § 12940(j)(1). To show a prima facie age harassment case, a plaintiff must demonstrate that: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Cook v. Bd. of Trs. of California State Univ.*, No. 2:23-cv-00843-DJC-CKD, 2025 WL 1151014, at *8 (E.D. Cal. Apr. 18, 2025) (quoting *Landucci v. State Farm Ins.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014)).

Regarding the third element of severity and pervasiveness, California courts have held that the "working environment must be evaluated in light of the totality of the circumstances:"

16

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances… These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 461-62, 115 P.3d 77, 90 (2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, (1993)). "The harassment must satisfy an objective and a subjective standard." *Ortiz v. Dameron Hosp. Assn.,* 37 Cal. App. 5th 568, 583 (2019) (objective severity "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'") "Put another way, '[t]he plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that [she] was actually offended.'" *Id.* (quoting *Hope v. California Youth Auth.,* 134 Cal. App. 4th 577, 588 (2005)).

In a similar case, a district court granted summary judgment on an age harassment claim on the basis that plaintiff failed to demonstrate that the age-related comments were sufficiently pervasive or severe. *Saqqa v. San Joaquin Cnty.*, No. 2:20-cv-00331-WBS-AC, 2021 WL 4123841, at *11-12 (E.D. Cal. Sept. 9, 2021), *aff'd sub nom. Saqqa v. Cnty. of San Joaquin*, No. 21-16617 at *2, 2022 WL 17817445 (9th Cir. Dec. 20, 2022). In *Saqqa*, the court noted that the plaintiff had not produced evidence that defendant made more than "a few stray comments to [plaintiff] based on his age, none of which were particularly severe," noting that defendant "stated that he had inherited older managers and needed to hire younger ones" and that defendant later "yelled 'old managers like you need to retire.'" *Id.* at *11. The court noted that other "witnesses confirm[ed] that they occasionally heard [defendant] make comments similar to these in quarterly meetings, but none of them state that these comments were made in reference to [plaintiff]." *Id.* Reasoning that these comments were "stray remarks made among a series of sporadic references to age," the court concluded that the comments did not constitute a "pervasive course of conduct that fundamentally altered the conditions of [plaintiff's] employment or impaired his ability to do his job." The court further held that the "remarks indicating that [defendant] needed to hire

younger managers or that old managers need to retire are simply not severe or humiliating enough to maintain a claim for age harassment under FEHA." *Id.* at *12; *see also Eyraud v. Swift Transportation Corp.*, No. 2:17-cv-00791-JAM-DB, 2018 WL 2157176, at *3 (E.D. Cal. May 10, 2018) (finding comment that plaintiff was "old and brittle" and question of "Exactly how old are you" might have been offensive, "but a reasonable jury could not find it created a hostile work environment"); *Stevens v. Cnty. of San Mateo*, No. C 04-02762 SI, 2006 WL 581092, at *5 (N.D. Cal. Mar. 7, 2006) (holding that comments that plaintiff was a "stupid old man making up rules" and "You are an old lion and in my country we kill old lions" were insufficient to establish harassment was sufficiently severe and pervasive to warrant liability), *aff'd*, 267 F. App'x 684 (9th Cir. 2008).

Here, Plaintiff's evidence similarly does not indicate a level of severity that gives rise to FEHA harassment liability. Plaintiff testified that he would get comments that he was "too old" or regarding his age "At least two or three times a month" from manager Uriel Rosalez. (Doc. 80-6 at 246-47.) While Plaintiff's testimony appears to conflate Mr. Rosalez's comments regarding Plaintiff's age, weight, and disability, Plaintiff testified regarding the age-related comments:

> Q. Okay. And then how about "Steve, you're too old," how many times do you think that happened?
> A. Two to three times a month on the regular for a couple of years anyway.
> Q. And was that teasing you kind of like about the cookouts or –
> A. I mean, sometimes he would giggle or laugh about it but I never thought it was funny.
> Q. Did he ever seriously tell you that you were too old?
> A. Absolutely.
> Q. And how many times do you think that happened?
> A. At least two or three times a month.
> Q. And what would an example be of that?
> A. Just that we're talking about managers and six-hour days and stuff -- he mentioned it one time when we were having a manager meeting, and this time he did joke, he says, You older managers need to get out there and help too, and you too, Steve.
> Q. Any other specific comments you can remember about being too old?
> A. Not dates or anything, but there was a lot.

18

Q. It would just kind of be "You're too old, Steve"?
A. Yeah.
Q. And what would the context be? It would be regarding an assignment or when you were complaining about an assignment?...
THE WITNESS: Yeah, there was a lot of different reasons. Sometimes he would just pop off and say something. They always were talking about these new managers that were going to -- new hourlies -- or hourlies that they wanted to make new managers out of, and that would usually bring something up about "you old managers."

(Doc. 80-6 at 246-47.)

Plaintiff's testimony only describes three specific comments: (1) Mr. Rosalez saying "You older managers need to watch your p's and q's" when talking about younger hourly workers who management wanted to become managers; (2) Mr. Rosalez saying "Steve, you're getting too goddamn old" when Plaintiff went to complaint about his Achilles issues; and (3) Mr. Rosalez joking during a manager meeting that "You older managers need to get out there and help too, and you too, Steve." (Doc. 80-6 at 236-37, 246.) Plaintiff additionally stated in his declaration that Mr. Rosalez "called all of us older managers into his office and told us we were 'getting a bad reputation'" and would threaten to fire older managers and replace them with younger managers. (Doc. 82-2 at 2.) In discussing the context of these comments, Plaintiff testified that "Sometimes he would just pop off and say something. They always were talking about these new managers that were going to -- new hourlies -- or hourlies that they wanted to make new managers out of, and that would usually bring something up about 'you old managers.'" (*Id.* at 247.)[5]

The specific comments and broader context do raise an issue of fact the conduct was so pervasive as to alter the conditions of employment or create an abusive work place. As in *Saqqa*, these were stray comments, none of which were severe. Of the three different type comments Plaintiff identified, two appear to be broader directions to older managers: "You older managers need to watch your p's and q's" and "You older managers need to get out there and help too, and

---

[5] Plaintiff additionally testified to instances of Mr. Rosalez telling Plaintiff that he was "falling apart," but it is unclear whether this is related to Plaintiff's age harassment theory or a separate discrimination or harassment theory. (*See* Doc. 80-6 at 241, 243-44, 245-46.)

19

you too, Steve." (Doc. 80-6 at 236-37, 246.)  Additionally, the context for these comments appears to be management meetings discussing older managers' performance and potential new managers, appearing similar to the remarks in *Saqqa* suggesting younger managers were needed or older managers should retire.  (Doc. 80-6 at 247) ("They always were talking about these new managers that were going to -- new hourlies -- or hourlies that they wanted to make new managers out of, and that would usually bring something up about 'you old managers.'")  While Mr. Rosalez's comment of "Steve, you're getting too goddamn old" is more directed than the other comments, this comment alone does not rise to the level of altering the conditions of employment and creating an abusive working environment.  Given the context of the comments and the lack of testimony regarding any more extreme comments, Plaintiff has not demonstrated that the age-based comments were sufficiently severe and pervasive such that a reasonable employee's psychological wellbeing would be seriously affected or that the conditions and working environment were altered.  *See Saqqa*, 2021 WL 4123841, at *11-12; *Eyraud*, 2018 WL 2157176, at *3 (publicly asking Plaintiff, "Exactly how old are you?" and stating Plaintiff was "old and brittle" were offensive but did not create a hostile work environment); *Stevens*, 2006 WL 581092, at *5 (comments were sporadic and isolated, and not the type of conduct that can be said to have "permeated" the workplace).

Plaintiff argues that just one incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment.  (Doc. 82 at 25.)  However, this argument ignores that courts require employees claiming harassment to show that the conduct was sufficiently severe or pervasive "in light of the totality of the circumstances."  *Miller*, 36 Cal. 4th at 462.  Even where an isolated incident may be actionable, the California Supreme Court has held that courts must still consider whether the act of harassment is "sufficiently severe under the totality of the circumstances."  *Bailey v. San Francisco Dist. Attorney's Off*., 552 P.3d 433, 453 (2024) (reaffirming the totality of the circumstances analysis and holding that a "coworker's use of an unambiguous racial epithet, such as the N-word, may be found to suffice").  Here, the Court examined the totality of the circumstances, including the comparative non-severity of identified

comments and the broader performance-based context for two comments, to determine that the comments were not sufficiently severe or pervasive to support an age harassment claim.  *See Saqqa*, 2021 WL 4123841, at *11-12; *Eyraud*, 2018 WL 2157176, at *3.

Plaintiff further argues that Defendant ignores Plaintiff's testimony that Mr. Rosalez "was making fun of his age, weight and disability about 2-3 times per month, on average" and suggests that Mr. Rosalez further harassed Plaintiff by requiring him to do "yard checks" despite Plaintiff's Achilles issue.  (Doc. 82 at 25.)

Plaintiff's complaint includes a claim for relief for "Age Harassment in Violation of FEHA" and Plaintiff alleges that he "was subjected to unwanted harassing conduct because of his age."  (Doc. 1-1 at 9-10.)  While Plaintiff also includes claims for relief for age discrimination and disability discrimination, Plaintiff's complaint does not include other bases, such as disability or weight, for harassment.  (*See* Doc. 1-1.)  Plaintiff may not raise new theories for the first time on summary judgment.  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (plaintiff's complaint gave defendants "no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment"); *Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.,* 268 F. App'x 555, 558 (9th Cir. 2008) (district court properly granted summary judgment where plaintiff abandoned the theory contained in its complaint and advanced a new theory).  Plaintiff's attempts to bootstrap these comments into a new harassment claim for relief is therefore prohibited.

Plaintiff additionally points to his testimony that Mr. Rosalez made age-based comments two to three times per month.  As discussed above, the comments Plaintiff testified to were insufficiently severe as to rise to the level of FEHA harassment.  While two to three comments per month may be frequent, Plaintiff does not offer further detail as to the context of those comments and some of the comments appear to be aimed at a broader group or were more performance-driven in nature.  The age-based comments were not sufficiently severe, threatening, humiliating, or disruptive of work performance.  *Miller*, 36 Ca. 4th at 461-62.

Plaintiff also points to a signed statement by an employee named Jose Gonzalez stating

1  that Mr. Rosalez said "we have a lot of key associates that are ready to move up in the company

2  and replace managers that can't perform to expectations." (Doc. 82 at 25, Doc. 82-1 at 12.)

3  Defendant responds that this letter is insufficiently connected to Plaintiff's harassment theory and

4  that the *ex post facto* letter is not admissible evidence.  (Doc. 84 at 8.)

5      The statement in its entirety reads:

> To whom it may concern, Uriel Rosales had a manager meeting
> with us, explaining the expectations for our Shipping Department
> Managers. He covered productivity, load quality, safety, team
> moral and being able to adapt to changes, and if we couldn't meet
> expectations we would be held accountable. He let us know where
> we were at and what we needed to do to meet expectations. He also
> said to let him know anything he could help us out with to succeed
> and that we have a lot of key associates that are ready to move up in
> the company and replace managers that can't perform to
> expectations

(Doc. 82-1 at 12.)

14      This letter does not show a severe and pervasive age harassment environment. While

15  Plaintiff appears to suggest that the comment "we have a lot of key associates that are ready to

16  move up in the company and replace managers that can't perform to expectations" should be read

17  in the context of other age-based comments, it instead appears to be intended to ensure that

18  employees were performing as expected.  This letter does not create an issue of fact regarding a

19  severe and pervasive harassing environment.

20      In sum, Plaintiff has not demonstrated that a genuine issue of material fact remains as to

21  whether the age-based comments was sufficiently severe or pervasive to alter the conditions of

22  employment and create an abusive working environment.  As there is no genuine dispute

23  regarding this element, Defendant's motion for summary judgment as to Plaintiff's age

24  harassment claim is GRANTED.

### D.  Plaintiff's Disability Discrimination Claim for Relief

26      Defendant argues that Plaintiff's disability discrimination claim for relief fails as Plaintiff

27  was not disabled within the meaning of FEHA and cannot establish that his termination was due

28  to his alleged disability.  (Doc. 80-1 at 17-20, Doc. 84 at 2-4.)  Plaintiff responds that he was

limited in the major life activity of walking, he only continued performing his job duties without accommodation because Defendant failed to accommodate him, and that there is evidence that decisionmakers knew of Plaintiff's disability.  (Doc. 82 at 15-17.)

Under FEHA, it is unlawful "[f]or an employer, because of ... physical disability ... of any person ... to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't. Code § 12940(a).  The elements of a prima facie case of disability discrimination under FEHA are: "(1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability."  *Ravel v. Hewlett-Packard Enter., Inc.,* 228 F. Supp. 3d 1086, 1095 (E.D. Cal. 2017) (quoting *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 254 (2d Dist. 2000)).  The *McDonnell Douglas* burden shifting test then applies.  *McDonnell Douglas*, 411 U.S. at 802; *Morgan*, 88 Cal. App. 4th at 69.

### 1.   Plaintiff Establishes a Genuine Issue of Material Fact as to His Disability

Under FEHA, a "physical disability" is any "physiological disease, disorder or condition" that both affects a specific bodily system and limits a major life activity.  Cal. Gov't Code § 12926(m); *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 46-47 (2006) ("To proceed as a physically disabled person under the first prong of the statutory definition, Gelfo must demonstrate his injury or physical condition (in this instance, a low back injury, whose existence is undisputed) makes "difficult" the achievement of work or some other major life activity"); *Alejandro v. S T Micro Electr., Inc.*, 129 F. Supp.3d 898, 907 (N.D. Cal. 2015).  "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working."  Cal. Code Regs. tit. 2, § 11065.  Additionally, a person is physically disabled if the individual is "regarded or treated by the individual's employer as having, or having had, any

23

condition that makes achievement of a major life activity difficult, or as having, or having had, a physiological condition that is not presently disabling, but that may become so." *Gelfo*, 140 Cal. App. 4th at 45 (internal quotations omitted); *see also Vasconcellos v. Sara Lee Bakery*, No. C 13–2685 SI, 2013 WL 6139781, at *3 n.3 (N.D. Cal. Nov. 21, 2013).

Here, Plaintiff presents evidence that he had difficulty with the major life activity of walking.  He points to his deposition testimony, his declaration, and medical reports to demonstrate his disability.  In his declaration, Plaintiff states, "In late 2020, I was having difficulty walking due to pain in my feet and the issues with my feet continued to get worse and worse in 2021" and that his "job involved a lot of standing and walking for hours on end, and this made the pain in [his] feet flare up."  (Doc. 82-2 at 3 ¶ 5.)  He also states "It was obvious to everyone that I was struggling with pain in my feet because I was limping and hobbling around…" and that in March or April 2021 he "was having a lot of difficulty walking and standing for long periods of time, which was part of my job."  (*Id.* ¶ 6.)  In his deposition, Plaintiff testified that his injury started in late 2020 and became progressively worse into 2021.  (Doc. 82-1 at 36.)  Plaintiff's May 12, 2021 new patient visit report notes "Pain is rated as moderate and described as sharp. He has tried and failed otc orthotics."  (Doc. 82-2 at 79); *see also* (Doc. 82-2 at 70) (May 11, 2021 report noting Plaintiff complained of "bilateral feet pain, some swelling in the back of ankle, soreness but the right foot seems to be worse… states the pain 6/10 because he's not walking on it. When pt is standing or walking on it, the pain is 10/10 and by the end of the day he is hobbling out of work…").  Viewing the evidence in light most favorable to Plaintiff, Plaintiff has provided sufficient evidence that his feet pain limited the major life activity of walking.  *See* Cal. Code Regs. tit. 2, § 11065.

Defendant argues that Plaintiff admitted that he was not disabled within the meaning of FEHA because he testified that he could perform all his job duties, citing a California Court of Appeal case in which the court treated a FEHA plaintiff's multiple statements that he could perform his job and "really didn't have any limitations" as a judicial admission that precluded him from claiming he had an actual physical disability.  *Gelfo,* 140 Cal. App. 4th at 47-48 ("Gelfo

24

was firmly convinced and unwavering in his belief he could have performed the job Lockheed denied him.")  However, in that case, the court noted that the plaintiff testified that "he no longer believed he required any medical restrictions," testified that he "was regularly 'out and about' all day and did not need to rest his back," and regularly rode a bike, took long walks, and performed yard work without irritating his back.  *Id.*

Unlike the *Gelfo* plaintiff, here, Plaintiff's deposition testimony and the record was more equivocal, and Plaintiff reported numerous times that he had difficulty with the major life activity of walking.  (*See* Doc. 80-6 at 277-78) (Q. Okay. But as far as physical activities, you could do all of those; is that right? A. Yeah. I mean, it's not something that I would have to do on a daily basis, but, I mean, especially the stairs, there's no really stairs over there. Q. Okay. But as you're looking at this right now, these were all things you could do; is that correct? A. Yes.) (Doc. 82-2 at 3 ¶¶ 5-6) ("In late 2020, I was having difficulty walking due to pain in my feet and the issues with my feet continued to get worse and worse in 2021… I was struggling with pain in my feet because I was limping and hobbling around…").  As the record here of Plaintiff's difficulty walking is distinct from the "clear, unequivocal, uncontroverted testimony" of *Gelfo*, Defendant's argument is unavailing.  *Gelfo*, 140 Cal. App. 4th at 47.

Defendant further argues that Plaintiff experiencing pain while performing certain job duties does not create a genuine dispute of material fact as to whether he was disabled under FEHA.  (Doc. 80-1 at 18.)  In support, Defendant cites California courts holding that "Pain alone does not always constitute or establish a disability."  *Arteaga v. Brink's, Inc.,* 163 Cal. App. 4th 327, 348 (2008).  However, while pain alone is not determinative, the court in *Arteaga* noted that "An assessment must be made to determine how, if at all, the pain affects the specific employee."  *Id.* ("An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person.")  The court emphasized that the plaintiff in that case "said his symptoms limited only his ability to play soccer, which is not a major life activity."  *Id.* at 347.  The court further noted that plaintiff "did not say what *kind* of pain he experienced, for example, tingling, aching, burning, stinging,

stabbing, or throbbing" and did not use "words indicating the *degree* of pain, such as minor, mild, moderate, severe, intense, extreme, or unbearable," but instead "merely reported feeling 'some kind of pain, when waking up' and '[t]oday, in the morning, 3/17/04, I was unloading coins and ... I started to feel the pain in my arms and fingers again.'" *Id.*

In contrast to the *Arteaga* plaintiff, Plaintiff specifically described the foot pain he felt and the difficulties it created in the major life activity of walking. In a clinic visit, he described his pain as sharp. (Doc. 82-1 at 36.) In his declaration, Plaintiff states, "In late 2020, I was having difficulty walking due to pain in my feet and the issues with my feet continued to get worse and worse in 2021" and that his "job involved a lot of standing and walking for hours on end, and this made the pain in [his] feet flare up." (Doc. 82-2 at 3 ¶¶ 5-6.) Plaintiff's descriptions of his pain in medical reports and his own testimony goes beyond the vague allegations of *Arteaga* and instead described how it interfered with the major life activity of walking.

Additionally, Defendant cites *Keshe v. CVS Pharmacy Inc.* and *Leatherbury v. C&H Sugar Co., Inc.* as holding that pain must interfere with an employee's ability to work to be a disability. (Doc. 80-1 at 18.) However, the courts in those cases only considered the major life activity of working rather than also considering the major life activity of walking, and appear to add a requirement that plaintiffs provide medical restrictions to establish a disability for a prima facie case. *Leatherbury v. C & H Sugar Co.,* 911 F. Supp. 2d 872, 880 (N.D. Cal. 2012), *aff'd*, 607 F. App'x 676 (9th Cir. 2015) ("Although [plaintiff] alleges that the climbing and crawling required by his job was made more difficult by his osteoarthritis, he was able to complete his job successfully each day. Dr. Guest did not restrict him from climbing or crawling, even after he was shown the Veterans Affairs letter and examined [plaintiff]."); *Keshe v. CVS Pharmacy Inc.,* No. 2:14-CV-08418 CAS MANX, 2016 WL 1367702, at *9 (C.D. Cal. Apr. 5, 2016), *aff'd sub nom. Keshe v. CVS Pharmacy*, 711 F. App'x 396 (9th Cir. 2017) ("[Plaintiff] claims that his injury caused him to suffer pain and made it difficult for him to perform his job duties; however, he does not contend that his injury ever precluded him from performing his job… Moreover… [plaintiff] has submitted no declarations, affidavits, or any other evidence from a doctor suggesting that he

should have stopped working as a result of his injury."). However, work is not the only major life activity implicated by disability discrimination claims. In this case where Plaintiff alleges walking as a major life activity, the Court does not find it necessary to present physicians' declarations to establish the disability element for a prima face discrimination claim.

Defendant further points to the fact that Plaintiff only saw a podiatrist once and that the podiatrist did not provide any work restrictions. (Doc. 80-1 at 18-19.) Defendant also cites Plaintiff's podiatrist, Dr. Tyler May, who testified:

> He had plantar fasciitis, which is heel pain…. When I see patients with heel pain, I do the exact same thing usually for almost every patient, which includes a cortisone injection, stretching exercises, arch supports, shoes. But for him, he was not painful enough -- he was not -- it was not severe enough that I felt like he even needed a cortisone shot. It was very minimal, very mild. And then I told him… to follow-up in two weeks… And he no-showed to his appointment.

(*Id.*; Doc. 80-6 at 666-67.) However, Dr. May also testified that he wrote that Plaintiff reported his pain as "moderate" and described it as "sharp." (Doc. 82-1 at 104, Doc. 82-2 at 79.) Rather than demonstrating that this issue is undisputed, this demonstrates a genuine dispute of material fact as to Plaintiff's pain impacting his ability to walk. This issue should therefore be resolved by a jury. *Anderson*, 477 U.S. at 255.

### 2. The Parties Do Not Dispute that Plaintiff was a Qualified Individual

The parties do not dispute that Plaintiff was a qualified individual for the purposes of the disability discrimination prima facie case. (*See* Doc. 82 at 2-3 n. 2.)

### 3. Plaintiff Establishes a Genuine Dispute of Material Fact as to Whether he was Terminated Due to His Disability

Defendant argues that Plaintiff cannot establish that he was terminated due to his disability because there is no evidence that anyone at Walmart knew of Plaintiff's disability and because there is no evidence of discriminatory intent. (Doc. 80-1 at 19-20, Doc. 84 at 3-4.) Plaintiff responds that Defendant's employees knew of or were aware of Plaintiff's disability and links his July 19, 2021 termination to his May 11, 2021 foot treatment. (Doc. 82 at 16-17.)

The evidence offered by Plaintiff is sufficient to create a genuine dispute that Defendant knew of Plaintiff's disability. Plaintiff testified that at a time when "COVID was rampant," Plaintiff was "limping with [his] Achilles" and was told by Mr. Rosalez "Steve… you're fucking falling apart." (Doc. 80-6 at 243.) Plaintiff also testified regarding a separate incident during which he told Mr. Rosalez that they needed more employees there, and Mr. Rosalez replied that he "got other managers, you need to get your ass out there and help. It's not my fault you're falling apart." (*Id.* at 245-46.)

A reasonable jury could conclude based on the evidence that Plaintiff was terminated for his disability. First, Plaintiff presents evidence of his supervisor's relatively direct remark that Plaintiff was "falling apart" as Plaintiff was limping around. Second, the proximity between one of the remarks and Plaintiff's July 2021 termination may suggest a discriminatory intent. The individual making the remarks, Mr. Rosalez, was involved in the decision-making process that led to Plaintiff's termination. (*See* Doc. 82-1 at 82.) (Kent Delperdang, Uriel Rosalez, Luis Garcia, and Mary Lou Gonzalez were involved in the decision-making process that led to Plaintiff's termination.) Plaintiff has therefore presented sufficient evidence raising a material issue of fact in his prima facie disability discrimination case. Inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651, 134 S.Ct. 1861, 1863 (2014).

### 4. Defendant Provides a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination

Once a FEHA plaintiff has demonstrated a prima facie case, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the employee's rejection. *McDonnell Douglas*, 411 at 802; *Morgan*, 88 Cal. App. 4th at 69. Here, Defendant contends that Mr. Wheat was terminated due to poor performance, disciplinary record, and failure to improve his job performance. (Doc. 80-1 at 22.) As discussed in relation to Plaintiff's age discrimination claim for relief, Defendant provided evidence demonstrating that Plaintiff had issues with his performance through performance reviews, performance metrics, and disciplinary records

showing continued errors.  (*See* Doc. 80-3 at 13-17, 19-22, 24, 26.)  Defendant has therefore

identified a legitimate, non-discriminatory basis for Plaintiff's termination.  *See Buenrostro*, 176

F. App'x at 828 (9th Cir. 2006).

### 5.  Plaintiff Has Provided Sufficient Evidence to Dispute Defendant's Reason as Pretextual

Because Defendant has provided a legitimate, non-discriminatory reason for termination,

the burden shifts to Plaintiff to prove that Defendant's explanation was merely a pretext to

conceal discriminatory conduct.  *McDonnell Douglas,* 411 U.S. at 804; *Guz,* 24 Cal.4th at 354.

In arguing pretext, Plaintiff points to relevant pretextual bases here: Plaintiff's satisfactory

job performance; Mr. Rosalez's comments regarding Plaintiff's age, weight, and disability;

Defendant's deviation from its progressive discipline policy; Defendant's lack of corroborating

documentation; and the suspect timing of his termination.  (Doc. 82 at 17-23.)

Plaintiff testified to a time during the COVID pandemic when he limped into Mr.

Rosalez's office and Mr. Rosalez told him "you're fucking falling apart.  (Doc. 80-6 at 243.)

Plaintiff also testified that he told Mr. Rosalez that they needed more employees there, and Mr.

Rosalez replied that he had "other managers, you need to get your ass out there and help. It's not

my fault you're falling apart."  (*Id.* at 245-46.)  Plaintiff further contends that he was terminated

on July 19, 2021, approximately two months after seeking treatment at Defendant's designated

medical provider for workers' compensation-related injuries on May 11, 2021 and asking Mr.

Rosalez to accommodate his Achilles heel issue. (Doc. 82 at 22-23, Doc. 82-2 at 70-73, Doc. 80-6

at 346.)

Courts have cautioned that "'temporal proximity alone is not sufficient to raise a triable

issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory

reason for the termination.'"  *Martinez v. Old Dominion Freight Line Inc.,* No. 2:13-CV-06369-

CAS(MRWX), 2015 WL 14094796, at *7 (C.D. Cal. Jan. 5, 2015) (quoting *Arteaga*, 163 Cal.

App. 4th at 353).  However, here, Plaintiff points to both temporal proximity and comments from

his supervisor.  Importantly, Plaintiff testified that Mr. Rosalez's comment that Plaintiff was

"fucking falling apart" when he limped into Mr. Rosalez's office occurred when "COVID was rampant" and asked for accommodation to be excused form "yard check." (Doc. 80-6 at 243.) Rather than being attenuated from the termination decision, Plaintiff's testimony suggests that at least one of the comments occurred between March 2020 and Plaintiff's termination in July 2021. Pairing the comments that Plaintiff was "falling apart" with the relatively short time between treatment and termination supports Plaintiff's argument that Defendant's offered reason was pretextual.

In summary, Plaintiff established genuine issues of material fact regarding the prima facie case; Defendant provided the legitimate, non-discriminatory rationale of poor performance for Plaintiff's termination; and Plaintiff has demonstrated sufficient evidence to suggest the reason was pretextual at the summary judgment stage. Accordingly, Defendant's motion for summary judgment is DENIED as to Plaintiff's disability discrimination claim for relief.

### E.  Plaintiff's Retaliation Claim for Relief

Plaintiff alleges that Defendant "retaliated against Plaintiff for engaging in protected activity by, among other things, terminating his employment after he requested reasonable accommodations for his disability and complained about being harassed and discriminated against because of his age." (Doc. 1-1 at 15-16.) Defendant argues that Plaintiff's FEHA retaliation claim fails because he did not engage in protected activity, Plaintiff cannot show a causal connection between any protected activity and his termination, and Defendant had legitimate, non-discriminatory reasons for terminating Plaintiff. (Doc. 80-1 at 26-29, Doc. 84 at 9.) Plaintiff only responds that he engaged in protected activity by complaining to manager Kent Delperdang and requesting accommodations relating to his Achilles issue a few months before he was terminated, and temporal proximity establishes a causal link sufficient to defeat summary judgment. (Doc. 82 at 26.)

"A FEHA retaliation claim is evaluated under the *McDonnell Douglas* framework on a motion for summary judgment." *Wilson v. City of Fresno*, No. 1:19-cv-01658-KES-BAM, 2025 WL 254449, at *16 (E.D. Cal. Jan. 21, 2025). To establish a prima facie retaliation case under

30

FEHA, a plaintiff must show (1) she engaged in a protected activity, (2) the employer subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

### 1.    Plaintiff Establishes a Genuine Issue of Material Fact Regarding Protected Activity

Plaintiff contends that his complaints to Mr. Delperdang constituted a protected activity. (Doc. 82 at 26.)  Defendant argues that Plaintiff never sought accommodation and that Plaintiff's claim that he informed Defendant's employees of his foot pain is not protected activity.  (Doc. 80-1 at 26-27, Doc. 84 at 9.)  "[P]rotected activity includes opposing any practices forbidden under the statute, or filing a complaint, testifying, or assisting in any proceeding under the statute," *Arreola v. FedEx Ground Package Sys., Inc*., 2015 WL 13916275, at *2 (C.D. Cal. Jan. 2, 2015), including "oppos[ing] activity the employee reasonably believes constitutes unlawful discrimination," *Dinslage v. City & Cnty. of San Francisco*, 5 Cal. App. 5th 368, 383 (2016).

Here, Plaintiff testified that he informed Mr. Delperdang in March or April of 2021 of Mr. Rosalez's comments regarding age and to request help for his feet issues.  (Doc. 82-2 at 3-4) ("When I went to Kent to get his help with the issues with my feet and my need for treatment and accommodations, I brought up the fact that Uriel was harassing me and specifically mentioned his ageist comments and threats to push out the older managers."); (Doc. 80-6 at 236-37) (Q. And you told him that Uriel was not giving you answers, harassing you, what else? A. I just told him some of the things that was said, you know, talking about there's a bunch of younger managers -- or younger hourlies out there that they want to push through to managers. He said, You older managers need to watch your p's and q's… A. So when I told Kent that, Kent's response was, That was a poor choice of words.)  As Plaintiff provides evidence that he complained to Mr. Delperdang regarding what he reasonably believed was discriminatory action and requested accommodation, and viewing the evidence in the light most favorable to Plaintiff, Plaintiff has demonstrated a genuine issue of material fact as to his engagement in protected activity.  *See Rodriguez v. Comcast, Inc*., 789 F. App'x 604, 606 (9th Cir. 2020) ("requests for accommodation

constituted protected activity under FEHA"); *Dinslage*, 5 Cal. App. 5th at 382–83.

### 2. The Parties Do Not Dispute That An Adverse Employment Action Occurred

Here, while the parties dispute the reason for Plaintiff's termination, they do not dispute that Plaintiff was terminated.  (*See* Doc. 80-1 at 16.)

### 3. Plaintiff Establishes a Genuine Issue of Material Fact as to the Causal Link Between the Protected Activity and Plaintiff's Termination

A plaintiff may establish a causal link between the alleged protected activity and any alleged adverse action by way of circumstantial evidence, including the employer's knowledge of the protected activity and the proximity in time between the protected action and the adverse employment act.  *See Dawson*, 630 F.3d at 936; *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

Here, Plaintiff provides evidence of the proximity in time between the protected action and the adverse employment act.  Plaintiff submits evidence of going to Mr. Delperdang in March 2021 complaining of discriminatory conduct and requesting accommodation, which establishes at least a dispute of material fact as to Mr. Delperdang's knowledge of the protected activity.  (Doc. 82-2 at 3-4, Doc. 80-6 at 236-37)  Plaintiff was subsequently terminated in July 2021 by Mr. Delperdang.  While courts have differed on how close the protected activity must be to the adverse action, the three to four month difference stated by Plaintiff suffices.  *See Coszalter v. City of Salem,* 320 F.3d 968, 977 (9th Cir. 2003) ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Ayala v. Frito Lay, Inc.,* 263 F. Supp. 3d 891, 912 (E.D. Cal. 2017) (finding two months adequate to plead causal link between protected activity and adverse employment action in FEHA retaliation claim); *Panka v. Tin, Inc.,* No. CV 11-1481 CAS JCX, 2012 WL 273892, at *4 (C.D. Cal. Jan. 30, 2012) ("a reasonable jury could conclude based on temporal proximity alone that there is a causal link between plaintiff's protected activity in late May 2008 and termination approximately

six months later"). Plaintiff has therefore established a genuine dispute of material fact as to the causal link between his protected activity and termination.

### 4. **Defendant Provides a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination**

"Under the burden-shifting scheme of Title VII and the FEHA, after the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action." *Winarto v. Toshiba Am. Elecs. Components, Inc*., 274 F.3d 1276, 1284 (9th Cir. 2001). As the Court has analyzed *supra* in relation to Plaintiff's age and disability discrimination claims for relief, Defendant provided evidence demonstrating that Plaintiff had issues with his performance through performance reviews, performance metrics, and disciplinary records showing continued errors. (*See* Doc. 80-3 at 13-17, 19-22, 24, 26.) Defendant has therefore identified a legitimate, non-discriminatory basis for Plaintiff's termination. *See Buenrostro*, 176 F. App'x at 828.

### 5. **Plaintiff Cannot Offer Evidence of Pretextual Reasoning**

As Defendant has provided evidence of a legitimate, non-retaliatory and non-discriminatory reason for Plaintiff's termination, Plaintiff must demonstrate that this reasoning is pretextual. *See Winarto*, 274 F.3d at 1284. Plaintiff's opposition only states "The temporal connections between Plaintiffs' protected activities and the adverse employment actions establish a causal link that is sufficient to defeat summary judgment." (Doc. 82 at 26.) However, courts have held that once "Defendant proffered legitimate, nondiscriminatory reasons for terminating Plaintiff… then proximity in time cannot alone establish pretext." *Delaney v. SimplexGrinnell L.P.,* No. CV10-05103 MEJ, 2012 WL 465177, at *6 (N.D. Cal. Feb. 13, 2012) (holding in FEHA retaliation case that plaintiff must offer "other evidence besides temporal proximity to establish a genuine dispute with respect to the issue of pretext"); *Vollmar v. Int'l Bus. Machines Corp.,* No. C-11-0629 MMC, 2012 WL 3731512, at *8 (N.D. Cal. Aug. 28, 2012) ("even if [plaintiff] has established a prima facie case based on temporal proximity, [defendant] has offered evidence of a legitimate, nonretaliatory reason for" termination, and "plaintiff has not offered

1    evidence sufficient to raise a triable issue as to pretext" by relying only on temporal proximity).

2    As Plaintiff does not offer other evidence beyond temporal proximity, Plaintiff has not shown that

3    Defendant's reasoning was pretextual and summary judgment is appropriate.  *Id.*

4        Accordingly, Defendant's motion for summary judgment is GRANTED as to Plaintiff's

5    retaliation claim for relief.

6        **F.  Plaintiff's Failure to Prevent Discrimination Claim and Wrongful**

7        **Termination Claim**

8        Plaintiff's complaint also includes claims for relief for Failure to Prevent Discrimination,

9    Harassment, and Retaliation pursuant to FEHA and Wrongful Termination in Violation of Public

10   Policy.  Cal. Gov't § 12940(k); (Doc. 1-1 at 16-19.)  Defendant argues that summary judgment is

11   appropriate for failure to prevent and wrongful termination claims where summary judgment has

12   been granted on the underlying FEHA claims.  (Doc. 80-1 at 29.)  Plaintiff argues that because

13   Plaintiff shows triable issues of fact as to his discrimination claims, triable issues remain as to

14   Plaintiff's failure to prevent claim and wrongful termination claim.  (Doc. 82 at 26.)

15       "A FEHA claim for failure to prevent discrimination requires discrimination in violation

16   of FEHA to have occurred."  *Solis v. Randstad N. Am., Inc.*, No. 5:24-CV-00145-JWH-SP, 2024

17   WL 4468030, at *6 (C.D. Cal. Aug. 16, 2024); *see Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App.

18   4th 280, 284 (1998), *as modified* (May 12, 1998); *Thompson v. City of Monrovia*, 186 Cal. App.

19   4th 860, 880 (2010).  Additionally, where a plaintiff's common law claim for wrongful

20   termination in violation of public policy is based upon an alleged violation of a specific statute

21   such as FEHA, the common law claim borrows the substantive provisions of that statute.  *Solis*,

22   2024 WL 4468030, at *6; *see Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 904 (1997); *see also*

23   *City of Moorpark v. Superior Ct.*, 18 Cal. 4th 1143, 1161 (1998) (noting that a wrongful

24   termination claim "must be carefully tethered to fundamental policies that are delineated in the

25   FEHA on which it is based") (internal quotations omitted).

26       Because summary judgment was granted as to Plaintiff's underlying FEHA retaliation and

27   harassment claims for relief, his derivative claims for relief related to FEHA retaliation and

28

34

harassment also fail.  *See Solis*, 2024 WL 4468030, at *6 (granting summary judgment as to derivative failure to prevent and wrongful termination claims where underlying discrimination claim failed).  However, Plaintiff's derivative claims for relief related to FEHA age discrimination and disability discrimination survive.

Accordingly, the Court GRANTS in PART and DENIES in PART Defendant's motion for summary judgment as to Plaintiff's Failure to Prevent Discrimination, Harassment, and Retaliation claim and Wrongful Termination claim.[6]

### G.  Plaintiff's Failure to Engage in the Interactive Process Claim for Relief

Plaintiff pleads a claim for relief for failure to engage in the interactive process pursuant to FEHA.  (Doc. 1-1 at 13-15.)  Defendant argues that Plaintiff's accommodation claims fail because Plaintiff did not suffer from a disability or communicate his limitations to his employer.  (Doc. 80-1 at 23-24, Doc. 84 at 8.)  Plaintiff does not expressly discuss his failure to engage in the interactive process claim, but in discussing his failure to accommodate claim argues that Plaintiff engaged the interactive process by informing managers of his medical issues and argues that his managers failed to provide accommodation.  (Doc. 82 at 24-25.)

"Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability."  *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015) (quoting *Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 424 (2007)).  "FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions."  *Id*.  However, "once the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process should have produced."  *Scotch v. Art Inst. of California*, 173 Cal. App. 4th 986, 1018–19 (2009); *see Nadaf-Rahrov v. Neiman Marcus Grp., Inc*., 166 Cal. App. 4th 952, 983 (2008) ("Section

---

[6] The Court has found that no triable issue of fact exists as to the claims for harassment and retaliation, and grants Defendant summary judgment on those claims.  Accordingly, the seventh claim for relief will be limited at trial to failure to prevent age and failure to prevent disability discrimination.

12940(n), which requires proof of failure to engage in the interactive process, is the appropriate claim for relief where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process.")

Here, Plaintiff fails to identify an available accommodation that the interactive process should have produced.  Plaintiff's brief broadly states that Plaintiff "repeatedly sought assistance from Uriel Rosalez, Kent Delperdang and Luis Garcia for his Achilles issue;" Plaintiff "emailed Mr. Rosalez to ask if he could be excused from a yard check due to his ongoing Achilles issue," and that "Ms. Gonzalez directed Mr. Rosalez to refer Mr. Wheat to HR or to get him paperwork for a leave of absence."  (Doc. 82 at 24-25.)  However, the broad "requests for assistance" do not identify an available reasonable accommodation.  Additionally, Plaintiff's email request is equivocal regarding whether he is requesting accommodation and provides no further guidance regarding whether that accommodation would be available and reasonable.  (Doc. 82-2 at 91) (In response to being asked if he would be in the next day, Plaintiff replied "I'll be here. If at all possible just temporarily if I could not do yard check for a bit. Still dealing with two torn Achilles tendons. If I need to I'll go, just trying to rehab my feet, and yard check is a killer for feet. Regardless, I'll be here early to help Jose.")  Additionally, the deposition testimony from Ms. Gonzalez does not clarify whether Plaintiff requested an actual accommodation or followed up regarding any potential leave.  (Doc. 82-1 at 88-89.)  At the summary judgment stage, Plaintiff now appears to suggest that being excused from yard checks or medical leave might be reasonable accommodations, but he does not do so with any specificity.  (Doc. 82 at 24-25.)  As Plaintiff has not been able to identify a "specific, available reasonable accommodation" through the litigation process, Plaintiff has not provided sufficient evidence to demonstrate a genuine dispute of material fact regarding his failure to engage in the interactive process claim.  *Nadaf-Rahrov*, 166 Cal. App. 4th at 983 ("We conclude the employee who brings a section 12940(n) claim bears the burden of proving a reasonable accommodation was available before the

employer can be held liable under the statute.").

Accordingly, Defendant's motion for summary judgment is GRANTED as to Defendant's failure to engage in the interactive process claim for relief.

### H. Plaintiff's Failure to Provide Reasonable Accommodation Claim for Relief

Plaintiff pleads a claim for failure to provide reasonable accommodation pursuant to FEHA. (Doc. 1-1 at 12-13.) Defendant argues that Plaintiff's accommodation claims fail because Plaintiff did not suffer from a disability or communicate his limitations to his employer. (Doc. 80-1 at 23-24, Doc. 84 at 8.) Plaintiff argues that he informed managers of his medical issues and that his managers failed to provide accommodation. (Doc. 82 at 24-25.)

Under FEHA, it is unlawful "for an employer ... to fail to make reasonable accommodation for the known physical ... disability of an applicant or employee." Cal. Gov't Code § 12940(m). An "employer's failure to reasonably accommodate a disabled employee is a violation of the statute in and of itself." *Achal v. Gate Gourmet, Inc*., 114 F. Supp. 3d 781, 798–99 (N.D. Cal. 2015). The elements of a prima facie claim for failure to make reasonable accommodation claim are: "(1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is qualified to perform the essential functions of the position; and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Id.* (quoting *Scotch*, 173 Cal. App. 4th at 1010.)

"Reasonable accommodation" means a "modification or adjustment to the workplace that enables a disabled employee to perform the essential functions of the job held or desired." *Taylor v. Trees, Inc*., 58 F.Supp.3d 1092, 1111 (E.D.Cal.2014); *see also* Cal. Gov't Code § 12926(p). The reasonableness of an accommodation is generally a question of fact. *Hanson v. Lucky Stores, Inc*., 74 Cal. App. 4th 215, 228 n. 11, 87 Cal.Rptr.2d 487 (1999). However, "[o]rdinarily, an employee is responsible for requesting accommodation for his or her disability, unless the employer itself recognizes that an employee has a need for such accommodation." *Achal*, 114 F.Supp.3d at 799 (citing *Brown v. Lucky Stores,* 246 F.3d 1182, 1188 (9th Cir.2001)). Once aware, the employer has an affirmative duty to reasonably accommodate, which is not

extinguished by one effort.  *Id.* (citing *Swanson v. Morongo Unified Sch. Dist.,* 232 Cal.App.4th 954, 969, 181 Cal.Rptr.3d 553 (2014)).  But it "is the employee's responsibility to understand his own condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee."  *Id.*  An employee "cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided" and the "employer is not obligated to choose the best accommodation or the accommodation the employee seeks."  *Hanson*, 74 Cal. App. 4th at 228 (1999).

Regarding the first two elements of the prima facie case, as discussed *supra*, there remains a genuine dispute of material fact regarding Plaintiff's disability and the parties have not disputed that Plaintiff is qualified.  However, Plaintiff does not establish that a genuine dispute remains regarding the third element of reasonable accommodation.  Plaintiff argues that he generally "sought assistance" from managers and asked to be excused from a yard check.  (Doc. 82 at 24-25.)  However, the requests for assistance and the equivocal email do not show that Plaintiff explained his limitations to Defendant.  (*Id.; see* Doc. 82-2 at 91.)  Additionally, Plaintiff's reference to Ms. Gonzalez's vague testimony does not indicate that Plaintiff spoke to Ms. Gonzalez regarding his limitations or that he communicated precise restrictions to Mr. Rosalez.  (*see* Doc. 82-1 at 88-89.)  While Plaintiff now floats potential accommodation options, Plaintiff fails to point to evidence that he provided Defendant "at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee."  *Achal*, 114 F.Supp.3d at 799.  Plaintiff therefore fails to demonstrate a genuine dispute of material fact as to the third element of the failure to provide reasonable accommodation claim for relief.

Accordingly, Defendant's motion for summary judgment as to Plaintiff's failure to provide reasonable accommodation claim is GRANTED.

### I.  Plaintiff's Failure to Produce Accurate Records Claim for Relief

Plaintiff's complaint also includes a claim for relief for failure to maintain and produce accurate records pursuant to California Labor Code Sections 226, 432, 1174, and 1198.5.  (Doc. 1-1 at 19-20.)  Defendant contends that Defendant cannot be held liable for failing to produce

employment records where there is no evidence that Defendant received a request. (Doc.80-1 at 29, Doc. 84 at 9.) Plaintiff argues that Plaintiff's counsel sent a letter addressed to Walmart's corporate address on August 19, 2022 requesting Plaintiff's employment records. (Doc. 82 at 26.)

California Labor Code Section 226(a) provides that "An employer, semimonthly or at the time of each payment of wages, shall furnish to their employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing" information including wages, hours, deductions, pay periods, names of the employee and employer, and hourly rates. Cal. Lab. Code § 226(a). Section 226(f) and (h) state that "failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in subdivision (c) entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer" and that an "employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees." *Id.* § 226(f), (h).

California Labor Code Section 1198.5(b)(1) further requires that an "employer shall make the contents of those personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request, unless the current or former employee, or his or her representative, and the employer agree in writing to a date beyond 30 calendar days to inspect the records, and the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request." Cal. Lab. Code § 1198.5(b)(1). Failure to permit the employee or the employee's representative to inspect or copy the personnel records within the specific time entitles that employee or Labor Commissioner to a penalty of $750 from the employer. *Id.* § 1198.5(k).

Plaintiff provides sufficient evidence to survive summary judgment on this issue. In her declaration, Plaintiff's counsel states: "My office sent a letter to Walmart on August 19, 2022

requesting Mr. Wheat' employment records. I personally reviewed the Certified Mail Receipt and can confirm that the records request was sent to Walmart's corporate address in Bentonville, AR via certified mail. My legal assistant, Deysi Jaramillo, confirmed in writing on September 22, 2022 that the letter had been successfully delivered to the Arkansas address but we never got a response or any records." (Doc. 82-1 at 3-4.)  Plaintiff further includes an exhibit of the letter dated August 19, 2022.  (*Id.* at 9-10.)

Defendant disputes that it received the request and suggests that Plaintiff provided no evidence.  But Defendant's position is contrary to the cited declaration.  (Doc. 82-1 at 3-4.) Defendant also provides no authority suggesting that Plaintiff prove receipt of a California Labor Code request to survive summary judgment on that claim for relief.

Accordingly, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's failure to maintain and produce accurate records claim for relief.  *Cf. Fox v. Eclear Int'l CO. Ltd.,* No. CV 17-0865 AS, 2018 WL 6118525, at *10 (C.D. Cal. June 13, 2018) (granting default judgment as to records requests claim pursuant to California Labor Code §§ 226 and 1198.5 where, "Based on the allegations, evidence, and declaration… Plaintiff demonstrated the merits and sufficiency of her failure to produce employment records claim against Defendants.").

### J.  Plaintiff's Prayer for Punitive Damages

Finally, Plaintiff's complaint includes a prayer for "punitive and exemplary damages according to proof" as to Plaintiff's age discrimination claim for relief, age harassment claim for relief, disability discrimination claim for relief, failure to accommodate claim for relief, failure to engage in the interactive process claim for relief, retaliation claim for relief, failure to prevent discrimination, harassment, and retaliation claim for relief; and wrongful claim for relief.  (Doc. 1-1.)  Defendant argues that Plaintiff's prayer for punitive damages is barred as Plaintiff cannot establish by clear and convincing evidence a wrongful act by an officer, director, or managing agent of Walmart; Plaintiff cannot establish by clear and convincing evidence and act of malice, oppression, or fraud; and Defendant's written policy forbidding discrimination bars corporate liability for punitive damages if implemented in good faith.  (Doc. 80-1 at 29-32, Doc. 84 at 9-

40

11.)  Plaintiff responds that punitive damages are appropriate as managers Rosalez and Delperdang exercised substantial independent authority and judgment as Defendant's managing agents and acted with malice, oppression, and fraud.  (Doc. 82 at 26-32.)

California law does not provide a separate claim for relief for punitive damages.  *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc*., 6 Cal. App. 5th 426, 430, n. 3 (2016), as modified on denial of reh'g (Dec. 29, 2016) (citing *McLaughlin v. Nat'l Union Fire Ins. Co*., 23 Cal. App. 4th 1132, 1164 (1994).  "Instead, a claim for punitive damages is merely an additional remedy that is dependent on a viable cause of action for an underlying tort."  *Id.*  In "a civil action under the FEHA, all relief generally available in noncontractual actions, including punitive damages, may be obtained."  *Commodore Home Sys., Inc. v. Superior Court*, 32 Cal. 3d 211, 221 (1982).  Punitive damages are available for violations of FEHA "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice...."  Cal. Civ. Code § 3294(a).

Under California law, an employer may not be held liable for punitive damages based upon the acts of its employees unless the employer (1) "had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others," (2) "authorized or ratified the wrongful conduct for which the damages are awarded," or (3) "was personally guilty of oppression, fraud, or malice."  *Id.* § 3294(b).  "With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  *Id.*

A "managing agent" is meant "to include only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy."  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566–67, 88 Cal.Rptr.2d 19, 981 P.2d 944 (1999).  Corporate policy includes policies that "affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership."  *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 715 (2009).  "It is this sort of

broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice." *Id.* Courts have clarified that a "managing agent is not simply 'any supervisor who can hire or fire employees.'" *Cable v. Starbucks Corp.*, 664 F. Supp. 3d 1014, 1029–30 (C.D. Cal. 2023) (quoting *White*, 21 Cal. 4th at 575)

In a recent case examining punitive damages, the district court held that plaintiff did not present adequate evidence to show that two identified employees exercised sufficient authority to be "managing agents." *Cable*, 664 F. Supp. 3d at 1029. In *Cable*, plaintiff argued that District Manager Koachway "oversaw a district that included 300 hourly employees, had authority to hire, fire, and transfer employees, and was responsible as a district manager for setting goals for his district, creating strategic and operational plans, and developing district-level strategies for achieving various goals" while Partner Resources Support Center representative Schultz, was a managing agent because she had "the authority to recommend termination, even where another PRSC consultant has recommended differently," and provided input on employment-related policies. *Id.* However, in granting summary judgment on punitive damages, the court reasoned that the fact that manager Koachway supervised 300 employees did "not make him a managing agent," that "evidence that Koachway developed strategies and plans to ensure the profitability of the stores within his district does not show that he has substantial discretional authority over [defendant's] policies" and that there was "no evidence in the record that would permit a reasonable factfinder to conclude that Koachway's supervision of his district was a 'significant aspect of [defendant's] business.'" *Id.* (quoting *White*, 21 Cal. 4th at 577). The Court similarly noted that plaintiff's evidence that representative Schultz "was part of a 'project team' updating employment policies does not demonstrate her substantial authority to change corporate policy at her discretion." *Id.* Instead, the court determined that plaintiff needed to provide evidence that the employees exercised substantial discretionary authority over decisions that ultimately determine corporate policy. *Id.* (quoting *CRST, Inc. v. Superior Ct.*, 11 Cal. App. 5th 1255, 1273 (2017)). The court further emphasized that the "key inquiry thus concerns the employee's authority to change or establish corporate policy." *Id.*

42

Here, the role, responsibilities, and authority of Mr. Rosalez and Mr. Delperdang are similarly limited and Plaintiff does not show their authority to change or establish corporate policy. In his declaration, Mr. Rosalez stated that he became Functional Operations Manager in February 2018 and in that position he was "responsible for the overall productivity and performance of all four (4) shifts in the Shipping Department" and his "main responsibilities included, among other things, ensuring each shift was adequately staffed, ensuring quality of all shipping loads, conducting and monitoring quality audits and housekeeping audits, monitoring shipping area losses, completing and evaluating various department reports, evaluating objective productivity metrics to devise solutions to improve, and managing any associate issues that may arise." (Doc. 80-5 at 33-34 ¶¶ 2, 4.) Mr. Rosalez also stated that he updated Area Managers via email and in-person meetings, that he was never "an officer, director or managing agent of Walmart," that he was "required to follow Walmart's policies and procedures for operating the facility, and those policies are set the Home Office in Bentonville, Arkansas" and that he "never possessed the authority to create and/or change those policies or procedures." (*Id.* at 34-35, 43 ¶¶ 7-8, 37.) Mr. Delperdang similarly stated authority limitations in that he was General Manager of "one of Walmart's 42 regional distribution centers in the United States" and "was responsible for managing operations of the Porterville Distribution Center, including the productivity and performance of every associate within the DC." (*Id.* at 3 ¶ 2-3.) Mr. Delperdang further stated that he was not "an officer, director or managing agent of Walmart, was "required to follow Walmart's policies and procedures for operating the facility, and those policies are set the Home Office in Bentonville, Arkansas," and "never possessed the authority to create and/or change those policies or procedures." (*Id.* at 16 ¶ 42.) These roles, responsibilities, and authority appear akin to those of the employees in *Cable*, and are insufficient to show Mr. Rosalez's or Mr. Delperdang's authority to change or establish corporate policy. *See Cable*, 664 F. Supp. 3d at 1029; *Roby*, 47 Cal. 4th at 714-15. Therefore, they are not managing agents or officers.

Plaintiff argues that Mr. Rosalez's and Mr. Delperdang's positions and roles make them managing agents, pointing to Mr. Delperdang running the entire Porterville Distribution Center

43

and having the power to make hiring, firing, and discipline decisions and Mr. Rosalez overseeing the entire shipping department, supervising all Area Managers and Operations Managers, and having the power to give counseling and discipling to all employees in the shipping department. (Doc. 82 at 28.)  Plaintiff further argues that by deviating from Walmart's accommodation and disability and ignoring Plaintiff's requests for accommodation and complaints of discrimination and harassment, Mr. Delperdang and Mr. Rosalez formulated operational policies and created ad hoc policy.  (*Id.*)

Even accepting that Mr. Rosalez and Mr. Delperdang exercised authority within the distribution center and had some degree of discretion in applying policies, their authority and responsibilities were isolated to one shipping department and one distribution center.  (*See* Doc. 80-5 at 3, 16, 33-35, 43.)  Plaintiff does not argue or provide evidence that Mr. Rosalez and Mr. Delperdang's authority extended beyond the Porterville Distribution Center.  (*See* Doc. 82 at 28-29.)  Plaintiff has therefore not shown that these managers could modify corporate policy that would "affect a substantial portion of the company" or that would "come to the attention of corporate leadership."  *See Roby*, 47 Cal. 4th at 714-15.  Plaintiff's arguments regarding these managers' authority and ad hoc policymaking is therefore unavailing.

Plaintiff further argues that store managers may be managing agents, citing a case holding that a genuine dispute existed when store managers were dismissing harassment complaints without any investigation.  *Almanza v. Wal-Mart Stores, Inc.,* No. 06-0553-WBS-GGH, 2007 WL 2274927, at *5 (E.D. Cal. Aug. 7, 2007).  In *Almanza*, the court noted that a "manager's ability to decide whether or not a particular policy is applied in particular circumstances is tantamount to making decisions that affect both the store and company policy."  *Id.* (citing *White,* 21 Cal. 4th at 577).  However, the California Supreme Court later clarified that "When we spoke in *White* about persons having 'discretionary authority over... corporate policy'… we were referring to formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership," adding that it was "this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice."  *Roby*,

47 Cal. 4th at 714-15; *CRST, Inc.*, 11 Cal. App. 5th at 1273. While a "managing agent" analysis is not based solely based upon job titles, Plaintiff has not demonstrated that the authority and responsibilities of Mr. Rosalez and Mr. Delperdang affected a substantial portion of the company or would be likely to come to corporate leadership's attention. (*See* Doc. 82 at 28-29.)

The Court therefore GRANTS Defendant's request to strike punitive damages. *See Cable*, 664 F. Supp. 3d at 1030.

## V.    CONCLUSION AND ORDER

For the reasons stated, IT IS ORDERED THAT:

1.    Defendant's Motion for Summary Judgment (Doc. 80) is GRANTED in part and DENIED in part as follows:

 a.    Defendant's motion for summary judgment as to Plaintiff's first claim for relief for Age Discrimination in Violation of FEHA is DENIED;

 b.    Defendant's motion for summary judgment as to Plaintiff's second claim for relief for Age Harassment in Violation of FEHA is GRANTED;

 c.    Defendant's motion for summary judgment as to Plaintiff's third claim for relief for Disability Discrimination in Violation of FEHA is DENIED;

 d.    Defendant's motion for summary judgment as to Plaintiff's fourth claim for relief for Failure to Accommodate in Violation of FEHA is GRANTED;

 e.    Defendant's motion for summary judgment as to Plaintiff's fifth claim for relief for Failure to Engage in the Interactive Process in Violation of FEHA is GRANTED;

 f.    Defendant's motion for summary judgment as to Plaintiff's sixth claim for relief for Retaliation in Violation of FEHA is GRANTED;

 g.    Defendant's motion for summary judgment as to Plaintiff's claim for relief for Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA is GRANTED in part and DENIED in part:

  i.    The motion is GRANTED as to Plaintiff's Failure to Prevent

45

1          Harassment and Retaliation, and

2              ii.   The motion is DENIED as to Plaintiff's Failure to Prevent Age

3                    Discrimination and Disability Discrimination;

4       h.   Defendant's motion for summary judgment as to Plaintiff's eighth claim for

5            relief for Wrongful Termination in Violation of Public Policy is DENIED;

6       i.   Defendant's motion for summary judgment as to Plaintiff's ninth claim for

7            relief for Failure to Maintain and Produce Accurate Records Pursuant to

8            California Labor Code is DENIED;

9       j.   Defendant's request to strike Plaintiff's prayer for punitive damages is

10           GRANTED; and

11  2.   The Court sets a Status Conference for **August 7, 2025, at 9:30 AM in Courtroom 8**

12  **(BAM) before Magistrate Judge Barbara A. McAuliffe** to address the remaining

13  claim for relief in this action and the status of the case.  The parties shall appear at the

14  conference remotely either via Zoom video conference or Zoom telephone number.

15  The parties will be provided with the Zoom ID and password by the Courtroom

16  Deputy prior to the conference.  The Zoom ID number and password are confidential

17  and are not to be shared.  Appropriate court attire required.

18

19

20  IT IS SO ORDERED.

21      Dated:   __**May 12, 2025**__                    ___/s/ _Barbara A. McAuliffe_____

22                                              UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

46